Matthias, J.
 

 The question presented by the demurrer to the relator’s petition is the constitutional validity of House Bill 674, passed July 1, 1933, and Amended Senate Bill 23, passed March 5, 1935, which exempt from assessment of taxes all the property of interurhan railroad companies used in operation in this state, other than real property so used, for and during the limited periods of time specified in these acts. The relator challenges the constitutional validity of these acts of the Legislature granting such exemptions.
 

 One of the principal contentions made by relator is that the legislation challenged is violative of Section 2 of Article XII of the Constitution of the state. The question of the constitutionality of such legislation is
 
 *558
 
 governed by the provisions of Section 2 of Article XII of the Constitution as it was amended at the election of November 5, 1929, and effective January 1, 1931. The subsequent amendment does not affect the question presented. Before taking up the specific provisions of the Constitution as thus amended, let us observe briefly the provisions of the Constitution on this subject as they previously existed.
 

 The Constitution of 1802 contained no provision with reference to exemptions, leaving that question entirely and completely within the jurisdiction and control of the Greneral Assembly.
 

 In the case of
 
 City of Zanesville
 
 v.
 
 Richards, And.,
 
 5 Ohio St., 589, 592, the court, through Ranney, C. J., speaking on the subject of the power of the Legislature with reference to taxation, and particularly with reference to exemptions prior to the adoption of Section 2 of Article XII of the Constitution of 1851, said: “Before the adoption of the present Constitution, the whole matter of taxation was committed to the discretion of the Greneral Assembly. It might be levied upon such property and in such proportion, as that body saw fit. The right to make exceptions and exemptions was unquestionable.”
 

 Section 2 of Article XII of the Constitution of 1851 required all property within the limits of a taxing district to be taxed by uniform rule, subject only to certain exemptions which were therein specified. Under the provisions of Section 2 of Article XII, prior and subsequent to its amendment in September, 1912, until the recent amendment in question, the Greneral Assembly was without power to exempt property from taxation other than that specified in the Constitution.
 
 Wilson, Aud.,
 
 v.
 
 Licking Aerie No. 387, F. O. E.,
 
 104 Ohio St., 137, 135 N. E., 545.
 

 Section 2, Article XII, as amended effective January 1, 1931, provided as follows: “No property, taxed
 
 *559
 
 according to value, shall he so taxed in excess of one and one-half per cent of its true value in money for all state and local purposes, hut laws may be passed authorizing additional taxes to be levied outside of such limitation, either when approved by at least a majority, of the electors of the taxing district voting on such proposition, or when provided for by the charter of a municipal corporation. Land and improvements thereon shall be taxed by uniform rule according to value. All bonds outstanding on the first day of January, 1913, of the state of Ohio or of any city, village, hamlet, county or township in this state, or which have been issued in behalf of the public schools of Ohio and the means of instruction in connection therewith, which bonds were outstanding on the first day of January, 1913, and all bonds issued for the World War Compensation Fund, shall be exempt from taxation, and, without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose, but all such laws shall be subject to alteration or repeal; and the value of all property so exempted shall, from time to time, be ascertained and published as may be directed by law.”
 

 This court has uniformly adopted and applied the rule of strict construction to the exemption provisions of Section 2, Article XII. As stated in 2 Cooley on Taxation (4 Ed.), 1382, Section 661: “* * * and generally, where the Constitution enumerates the property which is or may be exempted, it is held that the Legislature has no power to exempt other property than that enumerated. The lack of power to exempt
 
 *560
 
 may result from the express wording of the constitutional provision or be implied on the theory that the enumeration is intended to be exclusive-.”
 

 It is to be observed that, while Section 2 of Article XII authorizes certain exemptions recited in the provision prior to its amendment, in substantially the same language as it then read, it now very significantly provides: ‘* * * * without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to -exeinpt burying grounds,” etc. As amended, the Constitution itself now provides that the enumeration of certain classes of property which may be exempted does not take away or limit authority of the Legislature to make other exemptions. Thus, while the uniform rule was retained as to real estate, full and complete plenary power to otherwise classify property for taxation and determine exemptions therefrom apparently was restored substantially as it had existed under the provisions of the Constitution of 1802. It is quite obvious, therefore, that having expressly removed the previous limitation in the constitutional provision, the power of the General Assembly to determine the subjects and methods of taxation and exemptions of personal property therefrom is limited only by the provisions of Article I of the Constitution, which is the “equal protection of the law” provision and is substantially the same as the guarantee in that respect contained in the Fourteenth Amendment to the federal Constitution.
 

 The provision making the general power to grant exemptions subject to the provisions of Article I of the state Constitution therefore constitutes no restriction not already imposed by the federal Constitution. The principle involved is set forth in 1- Cooley on Taxation (4 Ed.), 578, Section 272, as follows:
 

 
 *561
 
 “In the absence of constitutional provisions to the contrary, the state may single out certain classes of objects for taxation, leaving other classes exempt or taxed at a different rate or in a different manner. For instance, in New York, where there is no constitutional requirement as to uniformity, classification of property so as to tax part but not all of the taxable property in the district is not prohibited. If there is no provision in the state Constitution requiring property to be taxed, then the only provision applicable is the equal protection of the laws clause in the federal Constitution which does not require taxation of all property but merely compels taxation of all property of the same class, — precludes taxing part of the same class of property and exempting other property of the same class.” \
 

 The general principle governing the matter of classification and exemption of personal property from taxation, based upon numerous federal and state decisions, is stated in 61 Corpus Juris, 126, as follows: “The Legislature may exercise wide discretion in selecting and classifying the subjects of taxation, and may arrange and divide’ the various subjects of taxation into distinct classes and impose different rates on the several classes without violating the requirement of equality and uniformity, provided the tax is uniform on all members of the same class, and provided the classification is reasonable and provided it is not arbitrary.”
 

 Probably the most complete and comprehensive statement of this sovereign power of taxation committed to the legislative branch of the government is to be found in 61 Corpus Juris, 384. “The power to exempt from taxation, as well as the power to tax, is an essential attribute of sovereignty, and may be exercised in the constitution, or in a statute, unless the constitution expressly or- by implication prohibits
 
 *562
 
 action by the Legislature on the subject. Where not prohibited or restricted in its exercise by constitutional provisions, the Legislature of a state has full power to exempt any persons or corporation or classes of property from taxation, but only from taxes within, its jurisdiction, and to limit the exemption, according to its views of public policy or expediency, subject only to the limitation that the exemption shall serve a public purpose, and that the exemption and the classification upon which it is based shall not be arbitrary, such power being included in the legislative power to tax, and to classify for purposes of taxation.
 

 Among the numerous pertinent cases supporting this proposition which may be cited are the following:
 
 Magoun
 
 v.
 
 Illinois Trust & Savings Bank,
 
 170 U. S., 283, 42 L. Ed., 1037, 18 S. Ct., 594;
 
 People of State of New York, ex rel. Metropolitan Street Ry. Co.,
 
 v.
 
 State Board of Tax Commissioners,
 
 199 U. S., 1, 50 L. Ed., 65, 25 S. Ct., 705;
 
 Rogers
 
 v.
 
 Hennepin,
 
 240 U. S., 184, 60 L. Ed., 594, 36 S. Ct., 265;
 
 Heisler
 
 v.
 
 Thomas Colliery Co.,
 
 260 U. S., 245, 65 L. Ed., 237, 43 S. Ct., 83;
 
 Ohio Oil Co.
 
 v.
 
 Conway,
 
 281 U. S., 146, 74 L. Ed., 775, 50 S. Ct., 310;
 
 State Board of Tax Commrs. of Indiana
 
 v.
 
 Jackson,
 
 283 U. S., 527, 75 L. Ed., 1248, 51 S. Ct., 540;
 
 Williams, Recr.,
 
 v.
 
 Mayor and City Council of Baltimore,
 
 289 U. S., 36, 77 L. Ed., 1015, 53 S. Ct., 431.
 

 In the
 
 Magoun case, supra,
 
 it was held that the right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them; and in the
 
 Heisler case, supra,
 
 it was held that a statute was not invalid by reason of the fact that it laid a tax on anthracite coal and levied none upon bituminous coal, and that such classification was not violative of the equal protection guarantee of the Fourteenth Amendment to the federal Constitution. From the opinion in the
 
 Williams
 
 
 *563
 

 case, supra,
 
 sustaining the validity of a statute exempting the property of a certain railroad from taxation, we quote the following at page 42:
 

 “It is not the function of a court to determine whether the public policy that finds expression in legislation of this order is well or ill conceived.
 
 Otis
 
 v.
 
 Parker,
 
 187 U. S., 606, 609 [47 L. Ed., 323, 23 S. Ct., 168];
 
 Missouri, Kansas & Texas Ry. Co.
 
 v.
 
 May,
 
 194 U. S., 267 [48 L. Ed., 971, 24 S. Ct., 638] ;
 
 Sproles v. Binford,
 
 286 U. S., 374, 388, 389 [76 L. Ed., 1167, 52 S. Ct., 581]. The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense. Within the field where men of reason may reasonably differ, the Legislature must have its way.
 
 Otis
 
 v.
 
 Parker, supra.
 
 Nor in marking out that field will a court be forgetful of presumptions that help to fix the boundaries. ‘As underlying questions of fact may condition the constitutionality of legislation of this character, the presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute.’
 
 O’Gorman & Young
 
 v.
 
 Hartford Fire Insurance Co.,
 
 282 U. S., 251, 257 [51 S. Ct., 130, 132, 75 L. Ed., 324].”
 

 A very pertinent and applicable statement of the court in the opinion in the
 
 Ohio Oil Company case, supra,
 
 at page 159, is as follows:
 

 “The states, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The state may tax real and personal property in a different manner. It may grant exemptions.”
 

 The present Constitution makes no specific refer
 
 *564
 
 ence to personal property. The fact should be again adverted to that it is only so much of the property of interurban railroads, excepting real estate, as may be used for railroad purposes that is included “within the statutory exemption provision in question. The Legislature, acting pursuant to the very broad and comprehensive powers vested in it, has not only classified personal property, but provided many exemptions from taxation. A very striking example is the exemption of personal property not used in business, and, under that exemption, personal property owned by individuals, including the very large item of household goods and furniture, is exempted from taxation. It is to be observed, therefore, that many and varied types of personal property have been accorded exemption from taxation by the Legislature under the last constitutional amendment, which requires only real estate to be taxed by uniform rule. In fact, a variance in the valuation for taxation purposes of the same species of property used in different lines of activity, as set forth in the provisions of Section 5388, General Code, may be regarded as working an exemption in favor of the one receiving the benefit of the lower valuation. However, a classification to be valid must be a classification of property — the subject of taxation — and not a classification of taxpayers, as was the situation under consideration in the case of
 
 State, ex rel. Hostetter,
 
 v.
 
 Hunt et al., Exrs.,
 
 post, 568, this day decided. Unquestionably the Legislature has the authority to vary the rates on any class of personal property.
 

 There is no division of authority upon the proposition that in the matter of classification the Legislature has a wide discretion, and that its action in that regard will not be set aside by the courts unless the classification attempted results in such discrimination against members of the same class as to deny them
 
 *565
 
 the equal protection of the laws. There must be a clear and manifest conflict between the legislative act and some provision of the Constitution.
 

 In regard to special classification of interurban railway companies, the fact is of importance that for many years they have been specifically dealt with as a class by the statutes of Ohio; hence, that is not a recently declared policy. However, it is not the province of the courts to review the action of the branch of the government to which has been committed the sovereign power of taxation and thereby to approve or disapprove the policy adopted with reference thereto.
 

 It has been very well suggested that it may be properly assumed that the Legislature had considered the public interest as concerned in the preservation of the transportation facilities involved, and the adverse effect of their abandonment.
 

 The authorities are uniform upon the proposition that the determination of what classes of property shall be taxed and what shall be exempt is exclusively a legislative function and must be sustained by the courts unless clearly violative of some express state or federal constitutional provision. As pertinently observed in the
 
 Jackson case, supra,
 
 at page 537: “The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection' of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. * * *
 

 . “The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction,
 
 *566
 
 * * * or if any state of facts reasonably can be conceived to sustain it. * * *
 

 “It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation.”
 

 The contention that these legislative provisions contravene Section 4 of Article XIII of the state Constitution may be disposed of very briefly. That section provides that ‘ ‘ The property of corporations, now existing or hereafter created, shall forever be subject to taxation, the same as the property of individuals.” The contention made is fully answered by the very obvious fact that no distinction has been made in-the legislation attacked as to the taxation of property of the same class, whether belonging to corporations or individuals. The definition of street, suburban and interurban companies set forth in Section 5416, General Code, in our opinion fully determines this contention.
 

 Counsel for the relator, by brief and in oral argument, have made the further contention that the legislation in question is violative of Section 28, Article II, of the state Constitution, providing, that “The General Assembly shall have no power to pass retroactive laws.” House Bill 674 was passed July 1, 1933, and went into effect October 19, 1933. By its provisions, the property of interurban railroad companies, other than real estate used for railroad purposes, is exempted from all taxes for the years during which such interurban railroad companies are operated and such property so used, “but not exceeding three years from January 1, 1932.” Amended Senate Bill 23, passed March 5, 1935, and effective June 6, 1935, provided a similar exemption for a period of two years from January 1, 1935.
 

 
 *567
 
 The mandatory character of the constitutional provision prohibiting retroactive laws cannot be disregarded. The situation presented by this case calls for the application of the principle that the invalidity of a statute, in so far as it is retroactive in terms, may not render it invalid in its prospective operation, and “if there are any exceptions to this rule they must be of cases only where it is evident, from contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the Legislature will be defeated if it shall be held valid as to some cases and void as to others.” 1 Cooley’s "Constitutional Limitations (8 Ed.), 367.
 

 The obvious intent and purpose of the legislation under consideration to exempt a certain property from taxation for a specified period of time will not be defeated if the statute is given effect only prospectively, though that results in only a partial accomplishment of the full object and purpose sought. Hence, the statute should be held valid and effective in so far as it is not retroactive.
 

 It must be concluded, therefore, that an exemption statute, such as this is, can exempt only taxes, the assessment of which had not been completed at the time the exemption statute became a law, and cannot exempt taxes which had been finally assessed and had become due and payable before the date when the exemption statute became a law.
 

 It follows that the demurrer must be overruled.
 

 Demurrer overruled.
 

 Weygandt, C; J., Jones, Day, Zimmerman, Williams and Myers, JJ., concur.